UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                        )
KATIE DUNNE,                            )     Civil Action No. _____
                                        )     COMPLAINT
            Plaintiff,                  )     JURY TRIAL DEMANDED
                                        )
    v.                                  )
                                        )
R80X1, LLC d/b/a SKYVIEWS OF AMERICA,   )
CHARLENE LEAVITT and DAVID MOORE,       )
                                        )
            Defendants.                 )
_____)

Plaintiff Katie Dunne (hereinafter referred to as "Ms. Dunne" or "Plaintiff") by and through her attorneys, Kalmanson Cohen PLLC, as and for her Complaint against Defendant R80X1, LLC d/b/a Skyviews of America ("Skyviews"), Charlene Leavitt ("Ms. Leavitt") and David Moore ("Mr. Moore") (collectively, "Defendants"), hereby alleges as follows upon personal knowledge as to her own acts and upon information and belief as to all other matters:

**NATURE OF THE CLAIMS**

1. This is an action to remedy sex and disability based discrimination in employment and redress the violation and deprivation of rights secured to the Plaintiff by Title VII of the Civil Rights Act of 1964, §§701 *et seq.*, as amended by the Civil Rights Act of 1991, including but not limited to 42 U.S.C. §§2000e-2, 3 and 5(g) ("Title VII"), the Pregnant Workers Fairness Act ("PWFA"), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD").

2. Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to and in accordance with Title VII, the PWFA and the NJLAD.

1

## JURISDICTION AND VENUE

3. Jurisdiction is conferred upon the Court by 42 U.S.C. §2000e-5(f)(3) and under 28 U.S.C. §§1331 and 1343(4).

4. The Court has supplemental jurisdiction over Plaintiff's claims brought under the NJLAD, pursuant to 28 U.S.C. §1367.

5. Venue lies in the District of New Jersey pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f)(3) in that substantial wrongful actions complained of occurred within New Jersey, and Defendants regularly do business within the State of New Jersey.

6. Plaintiff fully complied with all administrative prerequisites to the filing of this action. On or around July 6, 2023, Plaintiff timely filed charges of discrimination against Skyviews with the New Jersey Division on Civil Rights and the United States Equal Employment Opportunity Commission ("EEOC") complaining of the unlawful act alleged herein.

7. On October 30, 2023, the EEOC issued a Notice of Right to Sue.

8. Plaintiff received the Notice of Right to Sue on October 30, 2023.

9. Plaintiff filed her complaint in this action within ninety days of receipt of the Notice of Right to Sue.

## PARTIES

10. Plaintiff is an individual residing in West Orange, New Jersey.

11. Upon information and belief, Defendant Skyviews is a corporation formed under the laws of Arizona, with its principal place of business in Phoenix, Arizona.

12. Upon information and belief, Skyviews is owned and operated by Charlene and Guy Leavitt, a married couple.

13. Upon information and belief, Defendant Charlene Leavitt and her husband, Guy Leavitt, live in Phoenix, Arizona.

14. Upon information and belief, Defendant, David Moore lives in New Jersey.

15. At all relevant times, Skyviews owned and operated at least two Ferris wheels in the United States, one in Miami, Florida and one in East Rutherford, New Jersey.

## STATEMENT OF FACTS

16. In the fall of 2022, Skyviews was advertising an opening for the role of Assistant Manager of Marketing at the American Dream Mall in East Rutherford, NJ.

17. The position entailed marketing and events coordination for Skyviews' Dream Wheel Ferris wheel located at the American Dream Mall in East Rutherford, New Jersey.

### Skyviews Hires Plaintiff in mid-February 2023

18. In or around November 2022, Ms. Dunne applied for the open position with Skyviews.

19. Ms. Dunne was approximately three (3) months pregnant at the time she applied for the position with Skyviews.

20. On or around February 1, 2023, Skyviews' owner, Ms. Leavitt, and General Operations Manager, Mr. Moore, interviewed Ms. Dunne for the Assistant Manager of Marketing position.

21. During the interview process with Skyviews, Plaintiff did not disclose her pregnancy.

22. Ms. Leavitt and Mr. Moore conducted the interview via videoconference, whereby only Ms. Dunne's neck, chest, shoulders were visible.

23. Notably, Ms. Dunne's abdomen could not be viewed during the videoconference, and so Skyviews had no way of knowing that Ms. Dunne was pregnant at that time.

24. After a successful interview, Skyviews hired Plaintiff as the Assistant Manager of Marketing on or around February 17, 2023.

3

25. At the time of her hire, Plaintiff's understanding was that she was to be the only full-time Marketing Manager employee for Skyviews in New Jersey.

26. Plaintiff was approximately six (6) months pregnant on February 20, 2023, when she first reported to work for Skyviews.

27. At the beginning of her tenure at Skyviews, Ms. Dunne reported directly to Mr. Moore.

<u>Plaintiff Discloses Her Pregnancy; Moore Expresses Concerns</u>
<u>About her Commitment to Skyviews.</u>

28. On her second day of work, February 21, 2023, Ms. Dunne informed Mr. Moore that she (Ms. Dunne) was pregnant and asked if there was a Human Resources ("HR") Department to which she should speak with regarding company policies concerning parental leave.

29. Mr. Moore informed Ms. Dunne that Skyviews did not have an HR department and stated that, instead, Plaintiff should speak to him (Mr. Moore) about her plans for her impending childbirth.

30. Nearly immediately after disclosing her pregnancy, Mr. Moore failed to give Ms. Dunne any guidance around her role and responsibilities with Skyviews.

31. During her first week with Skyviews, no one from the company provided Plaintiff with any formal onboarding instructions or guidance about Company policies or the expectations for her position.

32. Accordingly, on or about February 28, 2023, Ms. Dunne asked Mr. Moore to outline the goals for her position.

33. But Mr. Moore refused to provide clarity around the metrics for success in her position.

34. Despite the lack of instruction, Ms. Dunne took it upon herself to communicate with customers, to build relationships with online influencers, and to find ways to promote the Ferris wheel.

35. Shortly after learning of her pregnancy, Mr. Moore expressed concerns to Ms. Dunne about her willingness to return to work following the birth of her child.

36. Plaintiff assured Mr. Moore that she was planning to return to work promptly following her delivery.

<u>Skyviews Strips Ms. Dunne of Responsibilities.</u>

37. Despite the lack of clarity around her position, Ms. Dunne was an exceptional performer for Skyviews.

38. Still, Plaintiff felt that she was being underutilized. She repeatedly asked for additional tasks and guidance about work that she could take on.

39. Skyviews was silent in response.

40. Instead of providing guidance and tasks to Ms. Dunne, on March 15, 2023, Skyviews hired a Marketing Director, Seleste Alers.

41. Skyviews' hire of Ms. Alers took place just three weeks after the Company learned that Ms. Dunne was pregnant.

42. Upon information and belief, Ms. Alers was then assigned to be Ms. Dunne's supervisor.

43. Ms. Dunne was very surprised by Ms. Alers' hire, because the Company had just—weeks earlier—told Ms. Dunne that she would be the only full-time marketing employee.

44. Ms. Alers assumed a host of Ms. Dunne's duties, and the Company then further ignored and excluded Ms. Dunne from meetings and marketing plans.

45. Though only there a short time, Plaintiff's performance was objectively successful– there was no legitimate basis for Skyviews to re-allocate her work to a different employee.

46. On the contrary, Skyviews was acting with discriminatory animus—it did not want to make the pregnant woman an invaluable part of its team because it did not want to have to provide her with time off to give birth or to recover therefrom.

47. Nevertheless, Plaintiff continued to report to work and perform her job duties well.

48. Specifically, as the social media manager, Plaintiff built social media handles, advertised the Dream Wheel attraction on social media and corresponded with local groups and social media influencers.

49. Ms. Dunne also worked with influencers and stakeholders to create an online presence and secure bookings for the Ferris wheel attraction.

50. In fact, shortly after commencing work there, on or around February 24, 2023, Ms. Dunne created a TikTok video advertising the Dream Wheel attraction.

51. This, Ms. Dunne's first TikTok video for Skyviews, went viral and had over 100,000 views.

52. Ms. Dunne successfully cultivated relationships and developed the Skyviews brand in order to promote the Dream Wheel attraction.

53. Throughout March and April 2023, during Ms. Dunne's seventh and eighth month of pregnancy, Ms. Dunne continued to inquire about Skyviews' maternity leave policy.

54. Mr. Moore and Ms. Leavitt repeatedly evaded Ms. Dunne's questions.

55. After receiving no response, on or around April 27, 2023, Ms. Dunne sent an email to Mr. Moore requesting a one-month leave, followed by the ability to work from home part-time as an accommodation following the birth of her child—which was to occur just one month later.

56. In that email, Ms. Dunne noted that her due date was May 24, 2023, and proposed that she take "one full month off, then two months of remote/hybrid work…"

57. Mr. Moore gave Ms. Dunne nothing but lip service—vaguely stating that he was looking into this request, but continually refusing to speak to Plaintiff about her impending childbirth and refusing to approve her request for an accommodation following her delivery.

58. This, despite Plaintiff's requests for information about her leave for nearly three months.

*59*. At about the same time, on or about April, 2023, Skyviews hired yet *another* Assistant Manager, "Jennifer" to perform the *exact same functions that Ms. Dunne had been performing.*

*60*. The writing on the wall was clear—the Company was forcing Ms. Dunne out in favor of a non-pregnant employee.

61. Jennifer would ask Plaintiff what she should be doing, but their work was entirely duplicative and there was no clarity or guidance around the roles and responsibilities of each team member.

62. Throughout April 2023, Skyviews further diminished Plaintiff's role.

63. On May 8, 2023, Plaintiff again inquired about Skyviews' intentions concerning Plaintiff's requests for a leave and an accommodation, and Mr. Moore told Plaintiff that he was planning to speak with Ms. Leavitt on May 9, and stated that he would inform her (Ms. Dunne) of the Company's decision at that time.

64. That response took the form of the immediate termination of Ms. Dunne's employment.

65. Specifically, on May 9, 2023, Plaintiff was summarily terminated, effective immediately, purportedly based on a "reevaluation of the marketing team."

66. At all times during her employment, Ms. Dunne performed in a satisfactory manner; she was given no constructive feedback or criticism of her performance during her tenure with Skyviews.

67. Skyviews' statement of a 'reevaluation' is pretextual and discriminatory.

68. There was no legitimate, non-discriminatory basis for the decision to terminate Ms. Dunne's employment.

69. On or around July 6, 2023, Plaintiff filed a Charge of Discrimination with the New Jersey Division on Civil Rights and the United States Equal Employment Opportunity Commission, EEOC Charge No. 524-2023-01987.

70. Plaintiff received a notice of her right to sue from the EEOC on or around October 30, 2023.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANT SKYVIEWS
(Sex Discrimination Under Title VII)

71. Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

72. Plaintiff is a member of a protected class because of her sex.

73. At all relevant times, Plaintiff was an employee and person within the meaning of Title VII.

74. By the acts and practices described above, Skyviews discriminated against Plaintiff based on her sex and because of her pregnancy with respect to the terms, conditions, or privileges of her employment and by terminating her employment in violation of the provisions of Title VII of the Civil Rights Act of 1964.

75. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation and other compensable damages as a result of Skyviews' discriminatory practices.

76. As a direct and proximate cause of Defendant Skyviews discriminating against Plaintiff in violation of the provisions of Title VII of the Civil Rights Act of 1964, Dunne has suffered damages and is entitled to relief, including but not limited to an award, inter alia, of

reinstatement, back pay, front pay, punitive damages, benefits and compensatory damages for emotional distress against Skyviews in amounts to be determined by a jury at trial.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT SKYVIEWS
(Discrimination Under the Pregnant Workers Fairness Act)

77. Plaintiff repeats and realleges the preceding allegations of this Complaint, as though they were fully set forth herein.

78. Under the PWFA, Plaintiff is a member of a protected class on account of her pregnancy.

79. At all relevant times, Plaintiff was an employee and person within the meaning of the PWFA.

80. During the relevant time period, Skyviews refused to discuss and approve Plaintiff's pregnancy-related leave that she was entitled to under the PWFA.

81. Under the PWFA, Skyviews is prohibited from retaliating against a qualified employee for requesting a reasonable accommodation related to the employee's pregnancy or childbirth;

82. By the acts and practices described above, Skyviews discriminated against Plaintiff and failed to accommodate her pregnancy related leave, and subsequently terminated Plaintiff, in violation of the provisions of the PWFA.

83. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation and other compensable damages as a result of Defendant Skyviews' discriminatory practices.

84. As a direct and proximate cause of Defendant Skyviews discriminating against Plaintiff in violation of the provisions of the PWFA, Plaintiff has suffered damages and is entitled to relief, including but not limited to an award, inter alia, of reinstatement, back pay, front pay,

punitive damages, benefits and compensatory damages for emotional distress against Skyviews in amounts to be determined by a jury at trial.

### AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT SKYVIEWS
(Sex Discrimination Under the NJLAD)

85. Plaintiff repeats and realleges the preceding allegations of this Complaint, as though they were fully set forth herein.

86. Plaintiff is a member of a protected class on account of her pregnancy.

87. At all relevant times, Plaintiff was an employee and person within the meaning of the NJLAD.

88. By the acts and practices described above, Skyviews discriminated against Plaintiff on account of her pregnancy with respect to the terms, conditions, or privileges of her employment and by terminating her employment in violation of the provisions of the NJLAD.

89. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation and other compensable damages as a result of Skyviews' discriminatory practices.

90. As a direct and proximate cause of Defendant Skyviews discriminating against Plaintiff in violation of the provisions of the NJLAD, Dunne has suffered damages and is entitled to relief, including but not limited to an award, inter alia, of reinstatement, back pay, front pay, punitive damages, benefits and compensatory damages for emotional distress against Skyviews in amounts to be determined by a jury at trial.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT SKYVIEWS
(Failure to Provide a Reasonable Accommodation Under the NJLAD)

91. Plaintiff repeats and realleges the preceding allegations of this Complaint, as though they were fully set forth herein.

92. Under the NJLAD, Plaintiff is a member of a protected class on account of her pregnancy.

93. At all relevant times, Plaintiff was an employee and person within the meaning of the NJLAD.

94. During the relevant time period, Plaintiff (1) had a disability under the NJLAD; (2) was qualified to perform the essential functions of the job, and (3) nonetheless suffered an adverse employment action because of her pregnancy-related disability.

95. During the relevant time period, Skyviews refused to discuss and approve Plaintiff's pregnancy-related leave that she was entitled to under the NJLAD.

96. By the acts and practices described above, Skyviews discriminated against Plaintiff and failed to accommodate her pregnancy related leave, and subsequently terminated Plaintiff, in violation of the provisions of the NJLAD.

97. Plaintiff has suffered and will continue to suffer irreparable injury, monetary damages, mental anguish, emotional distress, humiliation and other compensable damages as a result of Defendant Skyviews' discriminatory practices.

98. As a direct and proximate cause of Defendant Skyviews discriminating against Plaintiff in violation of the provisions of the NJLAD, Plaintiff has suffered damages and is entitled to relief, including but not limited to an award, inter alia, of reinstatement, back pay, front pay, punitive damages, benefits and compensatory damages for emotional distress against Skyviews in amounts to be determined by a jury at trial.

### AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS CHARLENE LEAVITT AND DAVID MOORE
(Aiding and Abetting Discrimination Under the NJLAD)

99. Plaintiff repeats and realleges the preceding allegations of this Complaint, as though they were fully set forth herein.

100. As set forth more fully above, Defendants Ms. Leavitt and Mr. Moore aided and abetted Skyviews' pregnancy-based discrimination against Plaintiff in violation of the NJLAD.

101. Aiding and abetting Skyviews' pregnancy and disability-based discrimination violates the provisions of the NJLAD.

102. As a direct and proximate cause of Ms. Leavitt and Mr. Moore aiding and abetting pregnancy-based discrimination against Ms. Dunne in violation of the provisions of the NJLAD, Plaintiff has suffered damages and is entitled to relief, including but not limited to an award, inter alia, of reinstatement, back pay, front pay, benefits, compensatory damages for emotional distress, and an award of punitive damages in amounts to be determined by a jury at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for an Order of this Court against the Defendants as follows:

(a) Declaring that the acts and practices complained of herein are in violation of Title VII and the NJLAD.

(b) Enjoining and permanently restraining violations of Title VII and the NJLAD.

(c) Directing the Defendants take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to effect Plaintiff's employment opportunities.

(d) As and for the First Cause of Action for sex-based discrimination under Title VII of the Civil Rights Act of 1964, an award of reinstatement and a money judgment representing back pay, front pay, benefits, and compensatory damages for pain and suffering, and punitive damages against Skyviews in amounts to be determined by a jury at trial, with interest, costs and disbursements;

(e) As and for a Second Cause of Action for discrimination under the PWFA, an award of reinstatement and a money judgment representing back pay, front pay, benefits, and compensatory damages for pain and suffering, and punitive damages against Skyviews in amounts to be determined by a jury at trial, with interest, costs and disbursements;

(f) As and for the Third Cause of Action for pregnancy-based discrimination under the NJLAD, an award of reinstatement and a money judgment representing back pay, front pay, benefits, compensatory damages for pain and suffering, and punitive damages against Skyviews in amounts to be determined by a jury at trial, with interest, costs and disbursements;

(g) As and for the Fourth Cause of Action for failure to accommodate a pregnancy-related disability under the NJLAD, an award of reinstatement and a money judgment representing back pay, front pay, benefits, compensatory damages for pain and suffering, and punitive damages against Skyviews in amounts to be determined by a jury at trial, with interest, costs and disbursements;

(h) As and for the Fifth Cause of Action against Ms. Leavitt and Mr. Moore for aiding and abetting discrimination under the NJLAD, an award of reinstatement, back pay, front pay, benefits, compensatory damages for emotional distress, and an award of punitive damages in amounts to be determined by a jury at trial, with interest, costs and disbursements;

(i) An award of liquated damages for Defendant's intentional and willful conduct engaged in with malice and/or reckless indifference to Plaintiff's statutorily protected rights;

(j) An award of prejudgment interest on the money awards requested in paragraphs (a) through (f) above;

(k) An award of Plaintiff's costs and reasonable attorneys' fees under Title VII and the NJLAD;

(l) An award to reflect the negative tax consequences of the verdict in Plaintiff's favor; and

(m) An award to Plaintiff of such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action.

Dated: New York, New York
November 29, 2023

          **/s/ Randi M. Cohen**
          Randi M. Cohen
          Kalmanson Cohen, PLLC
          830 Morris Turnpike
          Short Hills, New Jersey 07078
          631-806-3762
          randi@kalmansoncohen.com
          *Attorneys for Plaintiff,*
          *Katie Dunne*